# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

DARREN CUFF,

        Plaintiff,

v.

TRANS STATES HOLDINGS, INC.,
TRANS STATES AIRLINES, GOJET
AIRLINES, and ED TROWBRIDGE,
individually,

        Defendants.

## COMPLAINT AT LAW

Plaintiff, Darren Cuff ("Cuff"), by and through his attorneys, Caffarelli & Siegel Ltd., complains against Defendants Trans States Holdings, Inc. ("TSH"), Trans States Airlines ("TSA"), GoJet Airlines ("GoJet"), and Ed Trowbridge ("Trowbridge") as follows:

## NATURE OF ACTION

1. This is an action for damages and injunctive relief caused by the Defendants' unlawful termination of Plaintiff, in violation of Section 105 of the Family and Medical Leave Act of 1993, 29 U.S.C. § 2615 ("FMLA").

## JURISDICTION AND VENUE

2. This Court has jurisdiction of this action under 28 U.S.C. § 1331 and 29 U.S.C. § 2617.

3. The unlawful employment practices described herein were committed within the State of Illinois, at Defendants' facility at O'Hare International Airport, in Chicago, Illinois. Accordingly, venue in the Northern District of Illinois is proper pursuant to 28 U.S.C. § 1391(b).

**PARTIES**

4. Cuff was employed by Defendants from on or about October 22, 2006 until his termination on or about January 11, 2010. Cuff was hired by Defendant TSH, and routinely performed work for Defendants TSH, TSA, and GoJet. Cuff was an "employee" of Defendants TSH, TSA, and GoJet within the meaning of 29 U.S.C. § 2611(2)(A).

5. Cuff is an "eligible employee" under 29 U.S.C. § 2611(2)(B)(ii), because Defendants TSH, TSA, and GoJet are an integrated employer and/or joint employers and/or acting in each-other's interest under the FMLA, and together employ more than 50 employees within 75 miles of his worksite.

6. Defendant TSH is a corporation doing business in the State of Illinois, engaged in an industry affecting commerce, with a facility located at O'Hare International Airport in Chicago, Illinois.

7. Defendant TSA is a corporation doing business in the State of Illinois, engaged in an industry affecting commerce, with a facility located at O'Hare International Airport in Chicago, Illinois.

8. Defendant GoJet is a corporation doing business in the State of Illinois, engaged in an industry affecting commerce, with a facility located at O'Hare International Airport in Chicago, Illinois.

9. Defendants TSH, TSA, and GoJet are all in the airlines industry. Defendants TSA and GoJet are fully-owned subsidiaries of Defendant TSH, the holdings company. Defendants TSA and GoJet are regional airlines carriers that operate flights as United Express.

10. Defendants TSH, TSA, and GoJet share common ownership, share common integrated management, have interrelated operations, and have a centralized human resources department with centralized functions and paperwork, including shared benefit plans.

11. Defendant Ed Trowbridge is employed by TSH as the Managing Director, Customer and Ground Services, and as such was an agent of TSH, TSA, and GoJet. Trowbridge possessed authority to grant or deny vacations and leaves of absence to Cuff, and to terminate Cuff, and as such also was the "employer" of Cuff within the meaning of 29 U.S.C. § 2611(4)(A) during all times relevant to this action.

## FACTUAL ALLEGATIONS

12. Cuff was hired by TSH and began working for Defendants on or about October 22, 2006 as Regional Manager – United Express Operations. Throughout his employment, Cuff performed his job satisfactorily.

13. As Regional Manager – United Express Operations, Cuff performed work for, and directly supervised employees of, both Defendants TSA and GoJet. For example, he participated in employee meetings for both TSA and GoJet, drafted binding policies and procedures for both TSA and GoJet, was the contact person at O'Hare International Airport for both TSA and GoJet, and had access to both TSA's and GoJet's computer systems. On a daily basis, he worked side-by-side with both TSA and GoJet employees, and was considered one of them. The business card provided to Mr. Cuff contained the corporate logos of all three entities.

14. Defendant Trowbridge was Cuff's direct supervisor at all relevant times.

15. In the year prior to December 2009, Cuff worked for Defendants on a full-time basis, and had worked more than 1,250 hours.

16. Defendants employ more than fifty (50) employees within seventy-five (75) miles of Cuff's worksite.

17. TSA employs more than fifty employees at O'Hare International Airport.

18. GoJet employs more than fifty employees at O'Hare International Airport.

19. Cuff has been diagnosed with Crohn's Disease and Bipolar Disorder.

20. Cuff submitted a request for intermittent FMLA leave in the summer of 2008 for his Crohn's Disease and Bipolar Disorder.

21. Defendants approved Cuff's 2008 intermittent FMLA leave.

22. At the time he was hired, Cuff was told by Defendants that because of the nature of his job he could work flexible hours and/or work from home. As such, during his employment, Cuff often worked from home. He was never told by Defendants that this was a problem prior to his applying for FMLA leave in 2008.

23. In late 2009, Cuff experienced a flare-up of his Crohn's Disease. At the same time, he also exhibited manic behavior and was clinically depressed, both of which are common symptoms of Bipolar Disorder.

24. On or about December 9, 2009, Cuff requested four weeks of FMLA leave for his conditions, as well as potential intermittent FMLA leave following the initial four weeks, by filling out and providing the applicable FMLA paperwork to the Defendants.

25. On or about December 10, 2009, in a letter written by Trowbridge, Defendants denied Cuff's request for FMLA leave on the basis that they no longer deemed him to be an FMLA-eligible employee.

26. Cuff continued working, but his medical treatment needed to be altered as a result of Defendants' decision to deny his FMLA leave request.

27. After denying Cuff's request for FMLA leave, Trowbridge began retaliating against cuff by making false accusations of misconduct, and by demanding that Cuff work harder. Trowbridge expressed frustration at the fact that Cuff had requested yet another FMLA leave, after having taken it previously, in 2008.

28. Trowbridge's conduct caused Cuff additional stress, which further worsened Cuff's Crohn's flare-up and depression. As a result, Cuff told Trowbridge that he absent from work beginning on or about December 28, 2009 for a period of two to four weeks, as directed by his doctor, in order to care for his serious health condition. These absences were FMLA qualifying absences, and at least four weeks should have been covered by the FMLA.

29. Trowbridge refused to allow Cuff two to four weeks to care for his serious health condition, and instead required that Cuff exhaust his vacation days and sick days. Trowbridge demanded that Cuff return to work by January 11, 2010 and have "near perfect attendance" for the remainder of the year, or face termination. Defendants also failed to process a routine pay increase because of Cuff's 2008 FMLA leave, and because he had again requested FMLA leave.

30. By January 11, 2010, Cuff's health had not improved to a point where he felt able to return to work, so he did not. On or about January 11, 2010, Defendants terminated Cuff for chronic absences, which included days that should have been approved under the FMLA.

31. Based upon the above, Defendants unlawfully denied Cuff his rights under the FMLA, and terminated him in violation of the FMLA.

**COUNT I – FAMILY AND MEDICAL LEAVE ACT – FMLA INTERFERENCE**

32. Plaintiff incorporates paragraphs 1 through 31, as if fully incorporated herein.

33. By December of 2009, Cuff had been continuously employed by Defendants for approximately three years, and worked at least 1,250 hours during the preceding twelve months.

34. Cuff's Crohn's Disease and Bipolar Disorder constitute "serious health conditions" within the meaning of the Family and Medical Leave Act, 29 U.S.C. § 2612. As a result, Cuff was entitled to FMLA leave.

35. Cuff was entitled to receive up to twelve (12) weeks of unpaid leave, which could be taken all at once or intermittently, under the FMLA.

36. On or about December 10, 2009, Defendants wrongfully denied Cuff's request for FMLA leave.

37. Beginning on or about December 28, 2009, Cuff was absent from work due to his Crohn's Disease and Bipolar Disorder. These were FMLA qualifying absences.

38. On or about January 11, 2010, Defendants terminated Cuff for alleged chronic absences, which included FMLA qualifying absences. Defendants' decision to terminate Cuff violates the FMLA, 29 U.S.C. § 2615.

39. As a direct and proximate result of said acts, Cuff has suffered and continues to suffer loss of employment, loss of income, and loss of other employee benefits.

WHEREFORE, Plaintiff Cuff respectfully requests that this Court enter judgment in his favor and against Defendants by:

    A. Declaring that the acts and practices by Defendants as described herein constitute a violation of the FMLA;

    B. Enjoining and permanently restraining these violations of the FMLA;

    C. Awarding Cuff back wages and lost benefits due to Defendants' violations of the FMLA;

    D. Awarding Cuff front pay, or, in the alternative, directing Defendants to reinstate Cuff to his previous position;

  E. Awarding Cuff liquidated damages in an additional amount equal to the sum of the actual damages and interest pursuant to 29 U.S.C. § 2617(a)(1)(A);

  F. Awarding reasonable attorneys' fees and costs incurred by Cuff in connection with the instant action; and

  G. Awarding Cuff such further and additional relief, including equitable damages, as the Court may deem just and proper.

## COUNT II – FAMILY AND MEDICAL LEAVE ACT – FMLA RETALIATION

40. Plaintiff incorporates paragraphs 1 through 39, as if fully incorporated herein.

41. Cuff was eligible for an annual increase in pay on or about December 2009 retroactive to October 2009.

42. Defendants refused to process Cuff's pay increase.

43. But for having taken FMLA leave and exercising his rights to request an additional FMLA leave, Cuff would have received an increase in pay in or about October 2009.

44. Defendants' failure to process Cuff's pay increase constitutes retaliation for him having exercised his FMLA rights, in violation of the FMLA, 29 U.S.C. § 2615.

45. Defendants' stated rationale for terminating Cuff is pretext for FMLA retaliation.

46. But for having taken FMLA leave and exercising his rights, Cuff would not have been terminated.

47. Cuff's termination also constitutes retaliation for having exercised his FMLA rights, in violation of the FMLA, 29 U.S.C. § 2615.

48. As a direct and proximate result of said acts, Cuff has suffered and continues to suffer loss of employment, loss of income, and loss of other employee benefits.

WHEREFORE, Plaintiff Cuff respectfully requests that this Court enter judgment in his favor and against Defendants by:

A. Declaring that the acts and practices by Defendants as described herein constitute a violation of the FMLA;

B. Enjoining and permanently restraining these violations of the FMLA;

C. Awarding Cuff back wages and lost benefits due to Defendants' violations of the FMLA;

D. Awarding Cuff front pay, or, in the alternative, directing Defendants to reinstate Cuff to his previous position;

E. Awarding Cuff liquidated damages in an additional amount equal to the sum of the actual damages and interest pursuant to 29 U.S.C. § 2617(a)(1)(A);

F. Awarding reasonable attorneys' fees and costs incurred by Cuff in connection with the instant action; and

G. Awarding Cuff such further and additional relief, including equitable damages, as the Court may deem just and proper.


Dated: February 26, 2010                    Respectfully submitted,

                                            DARREN CUFF

Alejandro Caffarelli, #06239078
Bradley Manewith, #06280535
Caffarelli & Siegel Ltd.                        /s/ Alejandro Caffarelli
Two Prudential Plaza                        By: _____
180 North Stetson Ste. 3150                     Attorney for Plaintiff
Chicago, IL  60601
Tel. (312) 540-1230
Fax (312) 540-1231
Email   info@caffarelli.com
Web     www.caffarelli.com

**JURY DEMAND**

Plaintiff demands a jury to hear and decide all issues of fact.

_____
One of Plaintiff's Attorneys